**2026 UT App 103**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CHRISTOPHER DEAN SAUNDERS,
Appellant.

Opinion
No. 20230492-CA
Filed July 9, 2026

Fifth District Court, Cedar City Department
The Honorable Ann Marie McIff Allen
No. 221500713

Wendy M. Brown, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellant,
assisted by law student Lucius T.G. Anderson[1]

Derek E. Brown and Alexandra Herlong,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Christopher Dean Saunders appeals the district court's denial of his motion to suppress evidence discovered during a traffic stop. Saunders contends that the State failed to establish that the seizure of a small plastic baggie protruding from underneath a cigarette pack on his lap was justified under the plain view doctrine, because the incriminating nature of the baggie was not immediately apparent. He further argues that the

---

1. *See* Sup. Ct. R. Pro. Prac. 4-807 (governing law student practice in the courts of Utah).

absence of body camera footage undermined the court's factual findings and credibility determinations. We affirm.

BACKGROUND[2]

¶2　Late on a winter evening, a detective (Detective) with the Cedar City Police Department was on patrol with another officer when they observed a vehicle being driven erratically. According to Detective, the vehicle crossed lane lines, stopped improperly in an intersection, and hesitated for about ten seconds before proceeding once it had the right-of-way. Given this behavior, the officers were suspicious that the driver might be under the influence of alcohol or drugs, so they initiated a traffic stop.

¶3　Two individuals were inside the vehicle: the driver and Saunders, a passenger. The officers noted that both individuals appeared nervous. The officers were informed that the vehicle was a rental car, but neither occupant produced a copy of the rental agreement.

¶4　Upon returning to the patrol vehicle to run the vehicle occupants' information, Detective realized he did not have a copy of the rental agreement. He then decided to return to the vehicle to find out more about the agreement. As Detective approached the vehicle for the second time, he was informed by dispatch that Saunders was under Adult Probation and Parole (AP&P) supervision.

¶5　Once back at the vehicle, Detective noted that the occupants had started smoking cigarettes. He asked for a copy of the rental agreement, and Saunders and the driver looked inside

---

2. "In reviewing the [district] court's ruling on a motion to suppress, we recite the facts in the light most favorable to the [district] court's findings." *State v. Fullerton*, 2018 UT 49, ¶ 4 n.1, 428 P.3d 1052 (quotation simplified).

the glove box. But they refused to check inside the center console when Detective asked them to, which made Detective suspicious. From his position outside the passenger side of the vehicle, Detective saw that Saunders had an open cigarette pack on his lap. Detective noticed a small plastic baggie protruding from underneath the corner of the open lid of the pack. The baggie had been rolled up and appeared to Detective to have fallen out of the pack. Detective observed what appeared to be a white crystalline substance inside the baggie. In Detective's experience, narcotics users commonly conceal drugs inside cigarette packs and frequently package drugs in small, plastic baggies. For these reasons, and based on his training and experience in narcotics investigations, Detective believed the baggie contained methamphetamine or another controlled substance.

¶6      After observing the baggie, Detective directed Saunders to exit the vehicle. The officers then searched Saunders and discovered two syringes in his jacket pocket, one of which appeared to contain blood residue.

¶7      The officers seized the baggie and later conducted field testing on the residue. The baggie tested negative for methamphetamine. And a cocaine test was ultimately deemed inconclusive because the quantity of residue present was extremely small.

¶8      Thereafter, the State charged Saunders with possession of a controlled substance and possession of drug paraphernalia. Saunders moved to suppress the evidence obtained during the stop, arguing that Detective lacked probable cause to seize the baggie, even under the plain view doctrine, because the incriminating nature of the baggie was not immediately apparent. In support of this claim, Saunders pointed to the negative and inconclusive results from the field tests and asserted that because the State still did not know what was in the baggie, there was no

way that its incriminating nature could have been immediately apparent to Detective.

¶9     The district court held an evidentiary hearing to consider Saunders's motion to suppress. At that hearing, the parties discussed the available video evidence before presenting testimony, most notably video footage from the other officer's body camera. Saunders emphasized that although Detective was wearing a body camera during the stop, his camera was not recording when he observed the baggie on Saunders's lap or during the seizure itself. The court then received all the available footage into evidence. The State called two witnesses, Detective and the other officer, who both testified as to the facts recounted above. Saunders did not call any witnesses.

¶10    Following the evidentiary hearing, the district court denied Saunders's motion to suppress. The court accepted Detective's version of events and concluded that the search and seizure of the baggie was justified under the plain view doctrine because Detective had lawfully observed the baggie in plain view and had probable cause to believe it was associated with criminal activity. Saunders thereafter entered a conditional guilty plea preserving his right to challenge the suppression ruling on appeal.

ISSUE AND STANDARDS OF REVIEW

¶11    Saunders now exercises his right to appeal the suppression ruling. He contends that the district court erred in denying his motion to suppress, arguing that the warrantless search and seizure was not justified under the plain view doctrine because the incriminating nature of the baggie was not immediately apparent. "[W]e review a district court's ruling on a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Hebeishy*, 2022 UT App 136, ¶ 12, 522 P.3d 952. Specifically, "we review the factual findings underlying the [district] court's decision to grant or deny a motion

to suppress evidence using a clearly erroneous standard." *State v. Shepard*, 955 P.2d 352, 354–55 (Utah Ct. App. 1998) (quotation simplified). But "whether a specific set of facts gives rise to reasonable suspicion [or probable cause] is a determination of law and is reviewable nondeferentially for correctness." *Id.* at 355 (quotation simplified).

ANALYSIS

¶12 "Warrantless searches are unreasonable per se unless they fall within a recognized exception to the warrant requirement of the Fourth Amendment." *State v. Gallegos*, 967 P.2d 973, 976 (Utah Ct. App. 1998) (quotation simplified). One such exception is the plain view doctrine. "A seizure is valid under the plain view doctrine if (1) the officer is lawfully present, (2) the item is in plain view, and (3) the item is clearly incriminating." *State v. Shepard*, 955 P.2d 352, 357 (Utah Ct. App. 1998). "Evidence is clearly incriminating if the officer observing it has probable cause to associate the property with criminal activity." *Gallegos*, 967 P.2d at 976 (quotation simplified).

¶13 Saunders does not dispute the legality of the initial traffic stop, nor does he dispute that Detective was lawfully present at the scene and that the seized baggie was in plain view. He argues only that the search and seizure fails the third prong of the test because the incriminating nature of the baggie was not immediately apparent. But on this point Utah law does not require certainty. Rather, the question is whether Detective had "probable cause to associate the property with criminal activity." *State v. Kelly*, 718 P.2d 385, 390 (Utah 1986) (quotation simplified). Probable cause requires only "a reasonable belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Id.* (quotation simplified).

¶14 The district court correctly concluded that Detective had probable cause under the totality of the circumstances. Detective

testified that Saunders appeared nervous during the stop and that he refused to look in the center console for the rental agreement, which is an area where controlled substances are often located. And Detective observed a small, rolled plastic baggie filled with what appeared to be crystalline residue underneath the corner of the lid of an open cigarette pack. Detective testified that based on his training and experience, drug users commonly conceal narcotics in cigarette packs and frequently package narcotics in small, plastic baggies. Additionally, dispatch advised the officers that Saunders was under AP&P supervision. Taken together, these circumstances provided Detective with a practical, commonsense basis to associate the baggie with probable narcotics activity.

¶15 Because Detective had probable cause to believe that the baggie contained a controlled substance, the plain view doctrine applied and the search was reasonable. Nevertheless, Saunders argues that the district court's determination should be set aside because in announcing its ruling denying the motion to suppress, the court "made no mention of important, undisputed facts that weighed against [Detective's] credibility." In particular, he contends that the court ignored that (1) Detective failed to record the interaction with his body camera and (2) the baggie was ultimately proven not to contain methamphetamine. We address each argument in turn.

1. The Absence of Body Camera Footage from Detective Does Not Require Suppression of the Baggie.

¶16 Saunders argues that Detective's failure to properly record his interaction with Saunders undermines Detective's credibility and therefore defeats the district court's probable cause determination. We disagree.

¶17 At the suppression hearing, the parties extensively discussed the extent to which video footage of the interaction was available. Saunders alerted the district court to the fact that

Detective had been wearing a body camera at the time he spotted the baggie on Saunders's lap but that this camera apparently did not begin recording the encounter until after Detective discovered the baggie. Yet after hearing the testimony and observing the witnesses, the court expressly credited Detective's account of the encounter and found that he observed the protruding baggie and apparent crystalline residue before seizing the item.

¶18    That credibility determination is entitled to substantial deference on appeal, regardless of whether there exists video evidence to back it up. "Since a district court is in a unique position to assess the credibility of witnesses and weigh the evidence, [an appellate court] may not substitute its judgment as to a factual question unless the district court's finding is clearly erroneous." *State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650. A factual determination is clearly erroneous when it is "not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the [district] court's determination." *State v. Hinmon*, 2016 UT App 215, ¶ 21, 385 P.3d 751 (quotation simplified). This highly deferential standard is "based on the presumption that the [district court], having personally observed the quality of the evidence, the tenor of the proceedings, and the demeanor of the parties, is in a better position to perceive the subtleties at issue than we can looking only at the cold record." *State v. Calliham*, 2002 UT 86, ¶ 23, 55 P.3d 573.

¶19    Here, the absence of corroborating video evidence did not compel the district court to reject Detective's testimony, particularly where the court had the opportunity to evaluate his demeanor and other signs of credibility firsthand. Given that there is nothing in the record that would render the court's credibility determination clearly erroneous, we are not at liberty to second-guess the court's assessment.

¶20 Nor does the absence of body camera footage itself establish a Fourth Amendment violation or require suppression. On this point, Saunders directs our attention to Utah statutes that permit a court to "provide an adverse inference instruction" to a jury during a trial if a police officer failed to appropriately activate a body camera during an encounter. *See* Utah Code §§ 77-7a-104(2)(d), -104.1(2)(a). Though Saunders acknowledges that an adverse inference instruction cannot be given when a court is evaluating a motion to suppress because no jury is involved in that determination, he nevertheless suggests that the policy rationale underlying the adverse inference statute should still be considered in this case. That is, he argues that Detective's failure to activate his body camera at the outset of his encounter with Saunders, despite his statutory obligation to do so, "should have undermined his credibility." But even assuming that this statute has some application here, under no circumstances would the missing footage automatically render Detective's testimony unreliable or mandate exclusion of evidence; it would merely permit his credibility to be discounted. *See id.* § 77-7a-104.1(2)(a) (stating that a court "*may* provide an adverse inference instruction" (emphasis added)).

¶21 More importantly, probable cause may rest upon credible officer testimony even in the absence of video corroboration. The Fourth Amendment does not impose a body camera requirement before an officer's observations may support probable cause. The question remains whether the facts credited by the district court established a fair probability that the item seized was associated with criminal activity.

¶22 In this case, the district court reasonably concluded that they did. Detective testified that he observed a small, rolled plastic baggie protruding from under the open lid of Saunders's cigarette pack, that the baggie appeared to contain a crystalline substance, and that, based on his training and experience in narcotics investigations, the packaging and substance were consistent with

narcotics possession. The district court, after directly observing Detective's testimony and considering the totality of the circumstances, was entitled to credit that testimony notwithstanding the absence of video footage.

¶23    Saunders's argument ultimately asks this court to reweigh the evidence and second-guess the district court's credibility findings. But that is not our role on appellate review. Viewing the evidence in the light most favorable to the district court's ruling, we cannot say the court clearly erred in finding Detective credible.[3]

2.    The Later Field-Test Results Did Not Negate Probable Cause.

¶24    Saunders also argues that the later negative and inconclusive field-test results of the residue in the baggie

---

3. As part of his argument that the district court erred in assessing Detective's credibility, Saunders points to body camera footage from the other officer showing that during the initial encounter, Detective may have briefly placed his hand inside the vehicle's passenger window. Saunders does not assert that this alleged conduct constituted an independent Fourth Amendment violation requiring suppression. Rather, he argues that the incident demonstrated that Detective had a cavalier attitude toward constitutional limitations and that this attitude should have served to undermine Detective's credibility more generally. But the court was aware of the video and nevertheless found Detective credible after observing his testimony and demeanor firsthand. As explained above, we afford substantial deference to those credibility determinations because the district court "is in a better position to perceive the subtleties at issue than we can looking only at the cold record." *State v. Calliham*, 2002 UT 86, ¶ 23, 55 P.3d 573. On this record, the potential intrusion does not render the court's credibility findings clearly erroneous.

demonstrate that Detective lacked probable cause at the time of the seizure. This argument misunderstands the nature of probable cause review.

¶25    Probable cause is assessed from the perspective of the officer at the moment of the seizure, based on the facts then known to the officer. *See State v. Lloyd*, 2011 UT App 323, ¶ 11, 263 P.3d 557. Later developments do not retroactively invalidate an otherwise reasonable determination. *See State v. Kelly*, 718 P.2d 385, 390 (Utah 1986) (explaining that probable cause does not require that the officer ultimately "be correct" in his or her belief (quotation simplified)); *State v. Shepard*, 955 P.2d 352, 357 (Utah Ct. App. 1998) ("Probable cause requires only that the police officer reasonably believe that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct." (quotation simplified)).

¶26    Here, the methamphetamine field test was negative, while the cocaine test was inconclusive because only a minute amount of residue was present. Those later results do not establish that Detective acted unreasonably when he initially believed the residue was narcotics. The district court therefore correctly declined to treat the later test results as dispositive of the Fourth Amendment inquiry.

CONCLUSION

¶27    Because Detective had probable cause to believe that the baggie that he saw in plain view contained a controlled substance, the plain view doctrine applied and the search was reasonable. Saunders's appellate arguments are appropriately viewed as challenges to the district court's credibility determinations and the manner in which the court weighed the evidence. But given the court's advantaged position to personally observe the

evidence and witnesses, we will not, on this record, second-guess those determinations. Affirmed.

_____